UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEREK A. RIVERA,

                        Petitioner,                    Case No. 2:18-cv-217

v.                                                     Honorable Gordon J. Quist

CONNIE HORTON,

                        Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Derek A. Rivera is incarcerated with the Michigan Department of Corrections at the

Chippewa Correctional Facility (URF) in Kincheloe, Michigan.   On September 11, 2015,

following a three-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of

second-degree murder, in violation of Mich. Comp. Laws § 750.317.  Petitioner is serving a prison

term of 17 years, 6 months to 40 years.

        On November 26, 2018, Petitioner filed his habeas corpus petition raising five

grounds for relief, as follows:

> I.      [Petitioner] was denied a fair trial by other-acts evidence that had no proper
>         purpose and thus encouraged the jury to convict him on an improper
>         character to conduct rationale.
>
> II.     The trial judge committed plain error by requiring the defense expert to
>         prepare a report as a precondition to testifying.   In the alternative, trial
>         counsel was ineffective for not making a timely objection.
>
> III.    Petitioner was denied his Fourteenth Amendment right to due process of
>         law when there was insufficient evidence to support the essential elements
>         of second-degree murder beyond a reasonable doubt, and the trial court

abused its discretion by not granting appellant's motion for a directed verdict based on this issue.

IV.    Defense counsel was ineffective for not waiting until after Dr. Horowitz testified before asking for the directed verdict; for failing to sequester the witnesses; [for] stating Petitioner would exercise his right to remain silent by not testifying; and by advising Petitioner not to testify.

V.    Petitioner is entitled to reversal of his conviction because the cumulative effect of the errors that occurred at trial denied him his right to a fair trial and cast doubt on the reliability of the verdict.

(Pet., ECF No. 1, PageID.6, 8, 10-11, 16.) Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are noncognizable and/or meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are noncognizable or meritless. Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's conviction as follows:

This case arises from the death of Terry Alber. At the time of Alber's death, Alber and defendant were both homeless, and they spent time with several other individuals at a shack behind the Volunteers of America building in Lansing. Defendant and Alber had a history of conflict stemming from defendant's jealousy of Alber's friendship with Mersaides Schmit, defendant's former girlfriend. According to the evidence introduced at trial, on the night of May 3, 2014, in front of witnesses at the shack, defendant beat Alber. He punched him, hit him (possibly with a golf club), and stomped and kicked him in the head. The evidence suggested that Alber did not immediately die from this beating. Instead, he went to sleep outside the shack. He later awoke, took a few steps, and then fell to the ground. A few minutes later, one of the other men shook Alber as though to wake him and discovered that Alber was dead. The prosecution's expert, forensic pathologist Dr. John Bechinski, detailed Alber's numerous injuries, including at least 9 blows to the head, and he opined that Alber died from blunt force trauma to the head. More specifically, Bechinski explained that blows to the head caused subdural and subarachnoid bleeding, that Alber could have lived with this bleeding for minutes or hours, and that it was this bleeding that led to death. In contrast, the defense

2

> presented an expert, forensic pathologist Dr. Ronald Horowitz, who opined that Alber died from falling and hitting his head on a cinder block.  Defendant was charged with open murder . . . .

(Mich. Ct. App. Op., ECF No. 8-11, PageID.312.)  After hearing testimony for three days, the jury deliberated for less than two hours before returning a verdict finding Petitioner guilty of second-degree murder.  (Trial Tr. III, ECF No. 8-8, PageID.295-298.)  The trial court initially sentenced Petitioner on October 21, 2015, to 20 to 40 years imprisonment.  (Sentencing Tr. I, ECF No. 8-9, PageID.304.)

Petitioner, with the assistance of appointed counsel, appealed the judgment to the Michigan Court of Appeals.  Petitioner raised a sentencing-guidelines scoring issue on appeal and sought a remand to correct the error.  By order entered July 18, 2016, the Michigan Court of Appeals granted Petitioner's motion to remand.  (Mich. Ct. App. Order, ECF No. 8-11, PageID.331.)  The trial court corrected the error and resentenced Petitioner on September 7, 2016, to 17 years, 6 months to 40 years.  (Sentencing Tr. II, ECF No. 8-10, PageID.309.)

Petitioner, with the assistance of counsel, filed an initial appellate brief raising the same issues he now raises as habeas issues I and II.  Petitioner subsequently filed a supplemental *pro per* brief raising additional issues, including the issues he now raises as habeas issues III, IV, and V.  By unpublished opinion issued September 19, 2017, the Michigan Court of Appeals denied Petitioner relief, affirming the trial court with regard to all issues.

Petitioner, again with the assistance of counsel, sought leave to appeal the court of appeals' decision in the Michigan Supreme Court.  That court denied leave by order entered April 3, 2018. (Mich. Order, ECF No. 8-12, PageID.625.)  On November 26, 2018, Petitioner filed his timely petition for habeas relief in this Court.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if

it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Sufficient evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401 02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier of fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier of fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency of the evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard when it rejected Petitioner's sufficiency claim:

> This Court reviews de novo challenges to the sufficiency of the evidence. *People v Ericksen*, 288 Mich. App. 192, 195; 793 N.W.2d 120 (2010). We review "the evidence in the light most favorable to the prosecution and determine[]whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v McKinney*, 258 Mich. App. 157, 165; 670 N.W.2d 254 (2003). "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich. App. 210, 222; 749 N.W.2d 272 (2008).

(Mich. Ct. App. Op., ECF No. 8-11, PageID.316.) Although the court of appeals relied on state authorities, the standard it applied is identical to the *Jackson* standard.

6

Moreover, the court of appeals applied the standard exactly as *Jackson* directs—it examined the evidence in a light most favorable to the prosecution with reference to the state-law elements of the offense:

> Defendant's conviction of second-degree murder required the jury to find that (1) the victim died, (2) the death was caused by an act of defendant, (3) done with malice, and (4) without justification or excuse. *People v Goecke*, 457 Mich. 442, 463-464; 579 N.W.2d 868 (1998). The crux of defendant's argument is the second of these four elements.
>
> In this case, Mark Cobb, Arthur Devine, and Lawrence Fisher saw defendant hit Alber. In an interview with police, defendant admitted that he also kicked Alber in the head, both in an up-and-down stomping motion and a kick that was compared to kicking a football. Alber's blood was found on defendant's shoes and on a nearby golf club, and the prosecution offered detailed testimony of Alber's numerous injuries to his face, head, brain, and body. While there was evidence that Alber did not immediately die from this beating, Bechinski identified the cause of death as "blunt force trauma of the head, and the manner of death was classified as a homicide." Bechinski explained that Alber could have lived for minutes or hours with the subdural and subarachnoid bleeding that led to his death, and he indicated that Alber's various injuries could not be explained by a single fall. There was also evidence that defendant had a motive for killing Alber insofar as he was jealous of Alber's relationship with Schmit. Viewing the evidence in a light most favorable to the prosecutor, this evidence was sufficient to establish that an act of defendant, done with malice and without justification or excuse, caused Alber's death.

(*Id.*)

Petitioner does not take issue with the court of appeals statement of the evidence presented at trial. Instead, Petitioner contends that Alber died as a result of falling and striking his head on a cinder block. Petitioner's expert's testimony certainly supported that claim; but, the prosecutor's expert, Bechinski, testified the injuries would not have occurred from Alber falling and striking his head on a cinder block, but from multiple blunt force blows. *Jackson* counsels that it is the jury's responsibility to resolve that conflict and determine which expert was credible.

Petitioner urges this Court to invade the province of the jury and to view the evidence in a light that favors him. That is contrary to the clearly established federal law of *Jackson v. Virginia*. Petitioner's argument utterly fails to show that the state court of appeals'

determinations of the sufficiency issue are contrary to, or an unreasonable application of, clearly established federal law.  He has likewise failed to show that the facts determined by the court of appeals are unreasonable on the record.  Accordingly, he is not entitled to habeas relief on his sufficiency claim.

### IV.    Other acts evidence

Petitioner claims that his trial was unfair because the prosecution was permitted to introduce into evidence the testimony of two women regarding violent assaults they said that Petitioner perpetrated against them.  The trial court admitted the evidence under Michigan Rule of Evidence 404(b) to shed light on the issues of Petitioner's motive and his intent.  The Michigan Court of Appeals concluded the trial court properly admitted the evidence under the Michigan Rules of Evidence.  (Mich. Ct. App. Op., ECF No. 8-11, PageID.312-314.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.  State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75.  The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell*, 329 F.3d at 512.  Therefore, Petitioner cannot show that the state court's determination of the issue is contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to habeas relief on his claim.

## V.    Petitioner's expert's report

Petitioner's appeal brief provides a summary of the significance of the expert's report to Petitioner's defense:

> The prosecution and defense experts disagreed about whether Derek Rivera's conduct caused Terry Albers's death.  The defense expert, Dr. Horowitz [former Ingham County medical examiner's pathologist], was a last-minute substitute for the preferred defense expert, [Oakland County medical examiner] Dr. Dragovic.  As a precondition for Dr. Horowitz's testimony, Judge Collette required him to prepare a report and provide it to the prosecution.  The doctor did so in necessary haste.  The prosecution seized on perceived inadequacies in the report as reason to reject Dr. Horowitz's causation testimony in favor of the prosecution expert's.

(Pet'r's Appeal Br., ECF No. 8-11, PageID.430.)  On appeal, Petitioner argued that Judge Collette erred when he required a report from Dr. Horowitz.

Petitioner claims that Michigan Court Rule 6.201 regarding discovery in criminal cases, does not require a report as a precondition to an expert's testimony.  Instead, the rule states "a party upon request must provide all other parties . . . the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion . . . ."  Mich. Ct. Rule 6.201(A).  Petitioner contends the trial court erred in two respects: first, the court erred in requiring any information regarding Dr. Horowitz because the prosecutor did not request it; and second, the court erred by requiring a report instead of allowing Petitioner to provide a written description of the proposed testimony.  (Pet'r's Appeal Br., ECF No. 8-11, PageID.431; Mich. Ct. App. Op., ECF No. 8-11, PageID.314-315.)

The Michigan Court of Appeals rejected Petitioner's first contention because "the record shows that the prosecutor did make a request before trial . . . . [i]ndeed, on the first day of trial, defense counsel admitted that he knew 'that the Prosecutor wants a report.'"  (Mich. Ct. App. Op., ECF No. 8-11, PageID.314-315.)  Under the AEDPA, that determination of fact is presumed to be correct.  Petitioner may rebut it with clear and convincing evidence, but he has offered no evidence at all to rebut the presumption.

With regard to Petitioner's second contention, the court of appeals acknowledged that the court rule permitted Petitioner to provide a report or a written description of the substance of Dr. Horowitz's testimony.  To the extent the trial court erred in not expressly offering both options, however, the court of appeals concluded that Petitioner had suffered no prejudice because Petitioner had not shown that "a written description of Horowitz's testimony—as opposed to a 'report'—would have been less prone to criticism by the prosecutor's expert because it is somehow a less demanding disclosure." (*Id*., PageID.315.)  The court of appeals went so far as to determine that "a written description would contain much of the same information found in a report and Horowitz's opinions, stated in a written description, would have been equally susceptible to criticisms by the prosecutor's expert." (*Id*.)  Those factual determinations are well-supported in the record.  The prosecutor attacked Dr. Horowitz's opinions—whether stated on the stand or captured in the report—on their merits, not because of their form.

Whether or not the court complied with Mich. Ct. Rule 6.201(A) in requiring a report is purely a matter of state law and, therefore, the issue is not cognizable on habeas review. In fact, the state court's determination that the trial court did not run afoul of the court rule is binding on this court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  Even if the trial court reached the wrong conclusion on that issue, the federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Of course, the fact that state law permits something does not necessarily mean it is constitutional.  State courts may allow something that the federal constitution deems fundamentally unfair.  Here, however, Petitioner offers no Supreme Court authority holding that

requiring an expert's report under the circumstances presented would violate some deeply rooted, fundamental principle of justice.

Petitioner's constitutional rights may have been implicated if the trial court had excluded Horowitz's testimony for failure to provide a report. Several Supreme Court cases provide support for the claim that an accused must be permitted to present a defense. In *Crane v. Kentucky*, 476 U.S. 683 (1986), the Court concluded that the United States Constitution guarantees criminal defendants "a meaningful opportunity" to present a complete defense. *Id*. at 690. A central component of that guarantee is the right to offer the testimony of witnesses. *Taylor v. Illinois*, 484 U.S. 400, 409 (1988). Other components include the right to confront and cross-examine witnesses, *Delaware v. Fensterer*, 474 U.S. 15, 18-20 (1985), and the right to effective assistance from counsel, *Gideon v. Wainwright*, 372 U.S. 335, 343-45 (1963).

In *United States v. Scheffer*, 523 U.S. 303 (1998), the Supreme Court explained that the right to present a defense is not unbounded:

> A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). A defendant's interest in presenting such evidence may thus "'bow to accommodate other legitimate interests in the criminal trial process.'" *Rock, supra*, at 55 (quoting *Chambers, supra*, at 295); *accord, Michigan v. Lucas*, 500 U.S. 145, 149 (1991). As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Rock, supra*, at 56; *accord, Lucas, supra*, at 151. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused. *See Rock, supra*, at 58; *Chambers, supra*, at 302; *Washington v. Texas*, 388 U.S. 14, 22–23 (1967).

*Scheffer*, 523 U.S. at 308 (footnote omitted). *Scheffer* involved expert testimony; however, the testimony at issue was that of a polygraph examiner and it was excluded, not as a discovery sanction, but pursuant to a *per se* rule.

In *Taylor*, the Supreme Court upheld a trial court that refused to allow a defense witness to testify where the defense failed to timely identify the witness in response to a pretrial discovery request. *Id*. at 401-02. The defendant argued that the Sixth Amendment barred a court from ordering the preclusion of defense evidence as a sanction or violating a discovery rule. *Id*. at 406. He argued, alternatively, that on the specific facts of his case, it was constitutional error to preclude the evidence. *Id*. The *Taylor* court reviewed the interests of the prosecutor and the public that limit the right to present witnesses:

> The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case. The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony. Neither may insist on the right to interrupt the opposing party's case, and obviously there is no absolute right to interrupt the deliberations of the jury to present newly discovered evidence. The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.
>
> The defendant's right to compulsory process is itself designed to vindicate the principle that the "ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts." *United States v. Nixon*, 418 U.S. at 709. Rules that provide for pretrial discovery of an opponent's witnesses serve the same high purpose. Discovery, like cross-examination, minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony. The "State's interest in protecting itself against an eleventh-hour defense" is merely one component of the broader public interest in a full and truthful disclosure of critical facts.

*Taylor*, 484 U.S. at 411-12 (footnotes omitted). Those countervailing interests require the trial court to exercise its discretion in imposing the proper sanction for failure to disclose a witness in violation of the discovery rules. *Id*. at 414-15. The *Taylor* court provided a general framework for the exercise of that discretion:

> [I]t is neither necessary nor appropriate for us to attempt to draft a comprehensive set of standards to guide the exercise of discretion in every possible case. It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the

> mere invocation of that right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Id*. at 414-15 (footnote omitted). Against that backdrop, requiring an expert's report as a condition to the expert's testimony is simply not contrary to, or an unreasonable application of, clearly established federal law.

Although the court of appeals did not address the constitutional implications of requiring a report upon request before permitting expert testimony, it did find that requiring a report here caused Petitioner no prejudice—it was harmless. "State courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may grant habeas relief only where those determinations are objectively unreasonable." *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015)). The state court's determination that a "written description" would not have favored Petitioner any more than a report did is, on its face, objectively reasonable. Accordingly, the state court's determination precludes habeas relief on this issue.

Finally, Plaintiff's claim that counsel rendered ineffective assistance in failing to object to the expert report requirement is foreclosed by the court of appeals' reasonable determination that any error was harmless. *See Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016).

## VI.    Directed verdict

Petitioner claims that the trial court erred in failing to enter a directed verdict in Petitioner's favor. Petitioner claims further that counsel rendered ineffective assistance because counsel moved for a directed verdict at the close of the prosecutor's case-in-chief when counsel

should have made the motion after Petitioner's expert testified.  The Michigan Court of Appeals noted that it applies the same standard when reviewing a trial court's ruling on a motion for a directed verdict that it applies when it considers a challenge to the sufficiency of the evidence. The only difference is that, for a directed verdict challenge, the court will consider only the evidence presented up to the time the directed verdict motion is made.

For the reasons set forth in § III above, the trial court did not err in denying Petitioner's motion for directed verdict.  Viewing the evidence in a light that favors the prosecution, a rational trier of fact could have found that the essential elements of the offense were proven beyond a reasonable doubt.  Because that was true when the prosecutor rested her case in chief, it would also be true after Petitioner presented his sole witness, Dr. Horowitz.  At most, Dr. Horowitz would have created issues of fact regarding the prior evidence.  Viewed in a light that favors the prosecution, the evidence that sufficed before Dr. Horowitz testified would still suffice after.  Therefore, any renewal of the motion for directed verdict would have been futile.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, Petitioner has failed to show that the state appellate court's rejections of his directed verdict challenge or his ineffective assistance claims regarding the timing of the directed verdict motion are contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief.

### VII.    Failure to seek sequestration of witnesses

Petitioner contends that his counsel rendered ineffective assistance because he failed to ask the trial court to sequester witnesses.  The Michigan Court of Appeals refused to consider the claim because Petitioner had abandoned it by failing to meaningfully brief the issue. Petitioner's failure may be a procedural default; however, Petitioner's claim necessarily fails on

the merits.[1]  The trial transcript reveals that the court ordered sequestration of witnesses at the request of Petitioner's counsel and the prosecutor.  (Trial Tr. I, ECF No. 8-6, PageID.165.) Counsel cannot be deemed ineffective for failing to request sequestration when he actually requested it.

### VIII.   Privilege against self-incrimination

Petitioner contends his counsel rendered ineffective assistance when counsel advised Petitioner to exercise his right against self-incrimination and to forego testifying. Petitioner claims counsel based that advice on the prospect of potential impeachment with prior criminal activity.  Petitioner argues the jury was presented with evidence of other criminal activity anyway.  Petitioner argues further that his counsel compounded his erroneous advice by then informing the trial court, in the presence of the jury, that he had advised Petitioner of his right to remain silent and that Petitioner would remain silent.  (Trial Tr. III, ECF No. 8-8, PageID.280.)

The court of appeals rejected both claims.  With regard to counsel's announcement of Petitioner's exercise of the right to remain silent, the appellate court stated: "whether to inform the jury that he or she has a right not to testify is a matter of trial strategy."  (Mich. Ct. App. Op., ECF No. 8-11, PageID.318, (citing *People v. Hampton*, 231 N.W.2d 654 (Mich. 1975)).)  The prosecutor may not comment on the accused's silence.  *Griffin v. California*, 380 U.S. 609 (1965). The same is not true for defense counsel.

---

[1] The U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

In *People v. Hampton*, the case upon which the court of appeals relied, the Michigan Supreme Court addressed whether an accused had the right to decline the reading of an instruction informing jurors that they could draw no inference against the accused from a failure to testify. Petitioner has that right; however, it is a state-law right, not a federal constitutional right.  *See Lakeside v. Oregon*, 435 U.S. 333, 340-41 (1978) ("[I]t does not follow that the cautionary instruction in these circumstances violates the privilege against compulsory self-incrimination. . . .  It may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection. And each State is, of course, free to forbid its trial judges from doing so as a matter of state law.").  In *Lakeside*, the Supreme Court implicitly acknowledged that an accused might have good reason to emphasize the decision to remain silent, and the prohibition on the drawing of inferences against the accused on that basis, or the accused might have good reason to not address the exercise of the right to remain silent at all.  Therefore, the Michigan Court of Appeals' determination that defense counsel's comment on Petitioner's silence was a matter of strategy is entirely consistent with clearly established federal law.

Defense counsel's comment here did nothing more than advise the jurors that Petitioner had a right to remain silent and that he would exercise that right and not testify.  Shortly thereafter, and consistently with counsel's statement, the court instructed the jury: "Every Defendant has the absolute right not to testify.  When you decide the case you must not consider the fact[] that he did not testify.  It must not affect your verdict in any way."  (Trial Tr. III, ECF No. 8-8, PageID.292.)  Even if it were professionally unreasonable for counsel to make reference to Petitioner's exercise of the right against self-incrimination, Petitioner has failed to show any prejudice flowing from the reference.  The fact that Petitioner did not testify was apparent to the jurors and the fact that it was his right to decline to testify was also apparent to the jurors by way

17

of the court's instructions.  No harm was caused by counsel emphasizing Petitioner's right to remain silent under these circumstances.  Accordingly, the appellate court's rejection of Petitioner's claim is not contrary to, or an unreasonable application of, *Strickland*, the clearly established federal law regarding ineffective assistance of counsel.

Petitioner states additionally that counsel rendered ineffective assistance by advising Petitioner not to testify at all.  Petitioner reports that counsel advised him that if Petitioner testified, the prosecutor would bring up Petitioner's "past bad acts."  (Pet'r's Aff., ECF No. 8-12, PageID.707-708.)  Petitioner provides scant detail regarding the testimony he intended to provide, but, Petitioner claims he would have testified that he and the victim always fought and that the fight that preceded the victim's death was no big deal.  Petitioner acknowledges making the statements to detectives that the detectives then testified about at Petitioner's trial.  Those statements, made during a one and one-half hour long recorded interview, included statements that Petitioner hit the victim with a golf club, stomped the victim's head, and kicked the victim's head like a football.[2]  Petitioner now claims that he only told the detectives what they wanted to hear and that, actually, he never hit the victim with anything but fists.  Petitioner acknowledged that he had the victim's blood on him, but notes that everyone else did as well.  Petitioner indicates he told his attorney that he "wanted to get on the stand and tell the jury that I had lied to the detectives and that I never did anything that I told them."  (*Id.*, PageID.708.)

Petitioner's after-the-fact statements regarding his desire to testify cannot be reconciled with his statements at the trial.  Before the defense closed proofs, counsel questioned Petitioner on the record regarding the prospect of testifying:

---

[2] Although Petitioner ended up admitting those violent acts, during most of the interview he denied them, insisting that the fight was just a fist fight between friends.

| | |
|---|---|
| [Petitioner's Counsel]: | Mr. Rivera, you have a constitutional right to testify on your own behalf in this case, do you understand that? |
| [Petitioner]: | Yes. |
| [Petitioner's Counsel]: | Sir, you also have a constitutional right to remain silent.  You do not, under any circumstances, have to testify in this case, do you understand that? |
| [Petitioner]: | Yes. |
| [Petitioner's Counsel]: | Sir, have you had an opportunity to speak with me and Mr. Cornish, and we have advised you of the pros and the cons that you could face by either testifying or not, is that true? |
| [Petitioner]: | Yes. |
| [Petitioner's Counsel]: | Sir, do you have any questions with regard to your rights to testify or not testify at this time? |
| [Petitioner]: | No. |
| [Petitioner's Counsel]: | Sir, is it your wish, your desire to testify today on your own behalf or is it your desire to remain silent? |
| [Petitioner}: | Remain silent. |
| The Court: | All right. |

(Trial Tr. III, ECF No. 8-8, PageID.280.)

"The right to testify is personal to the defendant, may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional." *United States v. Webber*, 208 F. 3d 545, 550-51 (6th Cir. 2000).  The colloquy set forth above indicates that Petitioner relinquished his right to testify, but he contends that he did not do so knowingly, because it was based on faulty advice from counsel.

The nature of counsel's advice to Petitioner regarding the right to testify is not apparent from the record.  Petitioner's claim that counsel advised Petitioner that testifying would open him up to exploration of Petitioner's prior bad acts is not, on its face, incorrect or bad advice.

19

But, even if that advice might be deemed professionally unreasonable, Petitioner has failed to demonstrate any prejudice.

Several witnesses to the fight testified.  Some downplayed the fight, describing it as Petitioner does in his affidavit—a common fistfight over a woman.  Others described a more violent encounter similar to that eventually disclosed by Petitioner during his police interview. The heart of Petitioner's defense, however, was not the severity of the fight, it was the claim that the fight did not cause the victim's death—the victim's drunken fall hours later did.  Petitioner could not speak directly to that issue.  Even if Petitioner were able to convince the jurors that his prior confession was a lie and his present testimony the truth, he still admitted hitting the victim and the prosecutor's expert's testimony indicated that death was caused by multiple blunt force blows to the head.  The expert did not specify whether the blows were the result of a punch, a kick, or the swing of a golf club, only that there were multiple blows.

The Michigan Court of Appeals rejected Petitioner's argument on every possible level:

> On appeal, defendant also argues that his trial counsel was ineffective because he "erroneously advise[d] [defendant] that if he testified that the Prosecution would impeach him with his criminal past, when the prosecutor used his criminal past against him anyway."  However, he cites no record evidence that counsel gave such advice, and thus he has failed to establish the factual predicate of his claim. *Douglas*, 496 Mich. at 592.  Further, even assuming that counsel gave such advice, advice regarding the decision to testify is a matter of trial strategy, and defendant has not overcome the presumption that counsel was effective.  Cf. *People v Tommolino*, 187 Mich. App. 14, 17; 466 N.W.2d 315 (1991).  Moreover, there is no indication that, but for counsel's advice, defendant would have testified.   Nor can we see a reasonable probability that his unspecified testimony would have changed the outcome of the proceedings.  His claim is without merit. *Sabin (On Second Remand)*, 242 Mich. App. at 659.

(Mich. Ct. App. Op., ECF No. 8-11, PageID.318.)   It is the appellate court's reasonable determination that Petitioner's testimony would not have changed the outcome of the proceedings that forecloses Petitioner's ineffective assistance claim.  Petitioner cannot show prejudice from

counsel's advice to forego testifying.  Therefore, the court of appeals' rejection of Petitioner's claim is neither contrary to, nor an unreasonable application of, *Strickland*.  Accordingly, he is not entitled to habeas relief.

### IX.    Cumulative error

Finally, Petitioner complains that all of the errors considered together violated his constitutional rights.  The Michigan Court of Appeals rejected the claims because "'there [were] no individual errors that can be aggregated to form a cumulative effect.'"  (Mich. Ct. App. Op., ECF No. 8-11, PageID.319.)

Under the AEDPA, a court only may grant habeas relief based on a misapplication of Supreme Court law.  *Bailey*, 271 F.3d at 655.  The Sixth Circuit repeatedly has stated that cumulative error claims are not cognizable on habeas review.  "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief."  *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *see also Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006); *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004); *Millender v. Adams,* 376 F.3d 520, 529 (6th Cir. 2004); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002).  Therefore, because Petitioner's individual claims are without merit, Petitioner cannot show that any cumulative error violated his constitutional rights.  *See Seymour*, 224 F.3d at 557.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied. Finally, I recommend that the

Court not certify that an appeal would not be taken in good faith.


Dated:    December 31, 2019                     /s/ Maarten Vermaat
                                                    Maarten Vermaat
                                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).